RECEIVED
IN MONROE, LA
OCT 1 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JESSIE ALLEN MOORE | CIVIL ACTION NO. 07-0415 |
| VERSUS | JUDGE ROBERT G. JAMES |
| ANGUS CHEMICAL CO. | MAG. JUDGE KAREN L. HAYES |

RULING

This is an employment discrimination action brought by Plaintiff Jessie Allen Moore ("Moore") against his former employer, Defendant ANGUS Chemical Co. ("ANGUS"). Moore alleges that he was subjected to age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* For the following reasons, the Motion for Summary Judgment [Doc. No. 14] filed by Angus is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

ANGUS is a manufacturer of various chemicals and chemical products. Moore worked for ANGUS at the Sterlington, Louisiana plant from November 1996 to May 2006 as an operator.

Operators like Moore are responsible for many of the processes at the plant, including the transfer of chemicals and chemical products from one tank to another. ANGUS has adopted certain policies and procedures that operators are required to follow in order to prevent a chemical spill or Loss of Primary Containment ("LOPC"). Among these policies is the Critical Procedure Use Policy ("CPUP"). The CPUP specifies that the transfer of any material is considered a "critical task." The CPUP further states in bold face print: "**A checklist will be utilized each time a critical task is**

**performed, regardless of whether the task is considered routine or non-routine."**

In May 2006, a LOPC occurred during Moore's shift. Operator Terry Angell ("Angell") started filling out the checklist required for the transfer. At a shift change, Moore relieved Angell, but Angell did not pass the checklist to Moore. Moore initiated the actual transfer of chemicals.[1]

Approximately thirty minutes after the transfer, Jeannette Davis ("Davis"), the board operator on duty, notified Moore that the level indicator on the control panel was not rising, which indicated that the chemicals were not transferring to the finish tank. Moore performed a visual inspection of the tank and informed Davis that everything appeared to be fine. The following morning ANGUS discovered that 4,900 pounds of chemicals spilled from the system and were lost.

An investigative team concluded that Moore was primarily at fault in causing the LOPC.

On May 12, 2006, Moore was terminated. At that time, he was 52 years old. Angell, a 45-year-old Caucasian, received a written reprimand. Davis, who is older than Moore, was not disciplined. Davis's race is not in evidence.

On July 10, 2006, Moore submitted a "Charge Questionnaire," "Charging Party Discharge Questionnaire," and "Supplemental Intake Questionnaire" to the EEOC. [Exhs. 10, 16, 17]. The EEOC sent him a proposed charge, entitled "Charge of Discrimination," along with a letter stating that he needed to sign and return the charge to the EEOC, or his administrative complaint would be dismissed. The EEOC never received a signed charge and subsequently dismissed the matter. [Exh. 20].

---

[1] Moore repeatedly argues that he did not initiate the transfer because Jeannette Davis, the board operator on duty at the time, pushed the button that mechanically allowed the transfer to occur. [Doc. Nos. 23-1, p. 10; 23-2, p.1]. However, Moore admitted that "[he] started the transfer." [Exh. 4, p. 132:2].

On March 7, 2007, Moore filed suit, alleging that ANGUS terminated his employment in May 2006 because of his age and race[2] and in retaliation for filing an internal grievance about employment opportunities in September 2005, and that ANGUS deprived him of employment opportunities because of his race.[3] [Doc. No. 1].

On May 9, 2008, ANGUS filed a Motion for Summary Judgment [Doc. No. 14].

On July 24, 2008, Moore filed a response [Doc. No. 23].

On August 6, 2008, ANGUS filed a reply [Doc. No. 29].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material

---

[2]ANGUS claims that Moore has only alleged age discrimination. Although Moore's Complaint is somewhat confusing, under a liberal construction, he has alleged that he was terminated because of his race. [Doc. No. 1, ¶ 3 ("For Title VII purposes, [Moore] . . . was terminated on the basis of his race or color.")].

[3]Although Moore argues that he was denied employment opportunities because of his race *and* age [Doc. No. 23, p.8], he does not allege that he was denied employment opportunities because of his age in his Complaint [Doc. No. 1].

3

fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B.     Failure to Exhaust

ANGUS claims that Moore failed to exhaust his administrative remedies because he did not file a charge of discrimination with the EEOC. The filing of a charge is a prerequisite to filing suit under the ADEA and Title VII. *See* 29 U.S.C. §§ 626(d) (ADEA), 2000e-5(e) (Title VII); *see also Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006). In 2008, the Supreme Court clarified what constitutes a charge under the ADEA. *See Fed. Express Corp. v. Holowecki*, — U.S. —, 128 S. Ct. 1147 (2008) (*Federal Express*). For the reasons that follow, the Court finds that Moore exhausted his administrative remedies under both statutes.

#### 1.     ADEA Claims

In *Federal Express*, the Supreme Court resolved a circuit split as to what constitutes a charge under the ADEA. *See* 29 U.S.C. § 626(d). The Supreme Court held that in order for an intake questionnaire to constitute a charge, "it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the

4

employer and the employee." *Federal Express*, 128 S. Ct. at 1157–58.

In applying this test to the facts of *Federal Express*, the Supreme Court held that the plaintiff's responses to the EEOC questionnaire did not contain a specific request for the EEOC to take action. *Id.* at 1159 ("Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action."). The questionnaire was not labeled a "Charge of Discrimination," and the wording of the questionnaire suggested that the form's purpose was to gain information. *Id.* (noting that the express purpose of the questionnaire was "to facilitate 'pre-charge filing counseling' and to enable the agency to determine whether it ha[d] jurisdiction over 'potential charges'"). However, the plaintiff attached an affidavit to the questionnaire in which she asked the agency to "please force [my employer] to end [its] age discrimination." *Id.* The Supreme Court held that this statement could be "properly construed as a request for the agency to act." *Id.* at 1160. In addition, the plaintiff checked a box on the questionnaire indicating that she consented to disclosing her identity to her employer. *Id.* The Supreme Court held that "the combination of the waiver and [the plaintiff's] request . . . that the [EEOC] 'force' the employer to stop discriminating were enough to bring the entire filing within the definition of [a] charge." *Id.*

*Federal Express* involved an older version of the "Charge Questionnaire" submitted in this case. Like *Federal Express*, Moore's responses on the questionnaire, other than his consent to disclose his identity to his employer, do not indicate that he wanted the EEOC to take action. However, on the "Charging Party Discharge Questionnaire," Moore answered "yes" to whether he wanted to get his job back.[4] [Exh. 16, p. 4].

---

[4]The portion of the questionnaire, entitled "Settlement Information," provides:

Your employer may want to resolve this charge before the Commission issues a

5

Although this is a close question, the Court finds that Moore's disclosure of his identity to his employer and his request for his job back, combined with his express allegations of discrimination and retaliation, constitute a request to act.[5] In *Federal Express*, the Supreme Court focused on "whether, by a reasonable construction of [the filing's] terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* The questionnaire indicated that the EEOC would use a filer's desire to be reinstated "in attempting to resolve [the filer's] charge through the negotiated settlement process," and Moore expressly stated that he wanted his job back in response to this implicit offer. The Supreme Court adopted a "permissive standard," in part, based on its reading of "the design and purpose of the ADEA," which was to "set up a 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Id.* at 1158. The Court's conclusion that Moore's filings constitute a charge under the ADEA is consistent with the filing's terms and the Supreme Court's rationale.

The Court, therefore, declines to grant summary judgment on this basis and will proceed to

---

determination as to whether or not the law has been violated. Settlement before a determination has been issued does not mean that the law has been violated. The information below will be used by the Commission in attempting to resolve your charge through the negotiated settlement process.

Do you want your job back? _____

[Exh. 16, p. 4].

[5]ANGUS urges the Court to consider whether the EEOC considered Moore's responses sufficient to invoke the administrative process. The EEOC never received a signed charge from Moore and subsequently dismissed the matter because he "failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve [his] charge]." [Exh. 20]. The EEOC's failure to take action is irrelevant. *See* 128 S. Ct. at 1158–59 (rejecting contention that the EEOC's failure to take action means that the filings do not constitute a charge).

6

evaluate the merits of Moore's age discrimination claims.

### 2. Title VII Claims

In *Federal Express*, the Supreme Court cautioned that its holding should not be applied to other discrimination statutes "without careful and critical examination. . . .even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case." *Id.* at 1153. A number of district courts have applied *Federal Express* to Title VII claims, reasoning that the exhaustion of remedies and charge requirements are nearly identical[6] and because Title VII and the ADEA have been treated interchangeably. *See, e.g., Evenson v. Sprint/United Mgmt. Co.*, 3:08-CV-0759-D, 2008 U.S. Dist. LEXIS 65661, at *15–18 (N.D. Tex. Aug. 21, 2008). The Court agrees with and adopts the reasoning of those decisions and holds that *Federal Express* applies to Title VII claims.

For the reasons stated previously, Moore has exhausted his administrative remedies with respect to his Title VII claims.

The Court, therefore, declines to grant summary judgment on this basis and will proceed to evaluate the merits of Moore's race discrimination claims.

### C. Race and Age Discrimination Claims

Moore alleges that he was (1) terminated because of his age and race and (2) denied employment opportunities because of his race. Specifically, Moore contends that younger and/or Caucasian employees were treated more favorably and that his supervisors made discriminatory remarks. The ADEA prohibits an employer from discriminating against any person forty years of

---

[6] Although Title VII requires that a charge be verified, and the ADEA does not, the Court does not find that this difference is material. *See* 29 C.F.R. § 1601.9, .12(b) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge.").

7

age or older in the terms and conditions of his employment because of his age. *See* 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits an employer from discriminating against any person in the terms and conditions of his employment because of his race. *See* 42 U.S.C. § 2000e-2.

Disparate treatment claims under the ADEA and Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (ADEA); *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (Title VII). Moore must first establish a *prima facie* case of discrimination. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (ADEA); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (Title VII). If Moore establishes a *prima facie* case, the burden of production shifts to ANGUS to provide a legitimate, nondiscriminatory reason for Moore's termination. *Lapierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 (5th Cir. 1996). If ANGUS offers a legitimate, nondiscriminatory reason for terminating Moore's employment, the burden shifts to Moore to raise a genuine issue of material fact through circumstantial evidence that "(1) [ANGUS's] reason is pretext, or (2) [ANGUS's] reason, while true, is only one reason for its conduct, and another motivating factor is [Moore's] protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).

### 1. Wrongful Termination

For summary judgment purposes, ANGUS does not dispute that Moore can establish a *prima facie* case.

The burden shifts to ANGUS to articulate a legitimate, nondiscriminatory reason for terminating Moore. ANGUS claims that it terminated Moore because he was primarily at fault in

8

causing the LOPC.[7] ANGUS has, therefore, met its burden.

The burden then shifts to Moore to demonstrate that ANGUS's reason for his termination is a pretext for age or race discrimination or that ANGUS was motivated by age or race. Moore first claims that he was treated differently based on his age and race because he was terminated for causing a LOPC while other younger, Caucasian employees who have caused or contributed to a LOPC have not.

To show that a similarly situated employee was treated differently and that the difference in treatment is a pretext for discrimination, the conduct at issue must be "nearly identical." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995); *see also Polanco v. City of Austin, Tx.*, 78 F.3d 968, 977 (5th Cir. 1996) (reasoning that to show pretext, the "evidence ha[s] to contradict the legitimacy of the [employer's] explanation that the differences between [the two employees] justified" the difference in treatment). For summary judgment purposes, the pertinent facts of this case are as follows:

- Near the end of his shift, Angell started preparing the checklist for the transfer of chemicals. At the shift change, Angell told Moore that the checklist was completed.

- Moore failed to obtain the checklist from Angell before transferring the chemicals. Although he was warned by a fellow coworker that the chemicals were not transferring properly, he failed to notice that a valve was not properly secured.

- A subsequent investigation revealed that Angell placed the checklist in his locker

---

[7]As support, ANGUS offers the affidavit of Ernest Green ("Green"), the Production Leader. [Exh. B]. Moore objects to the admission of Green's affidavit because it "is from an interested witness, . . . some of whose testimony is derived from hearsay and not within the personal knowledge of Mr. Green. Moreover, Mr. Green's testimony is not corroborated." [Doc. No. 23, p. 21]. Moore does not provide any argument or citation to pertinent portions of Green's testimony in support of his objections. Therefore, the Court will not address his objections.

instead of filing it with his supervisor and that he had "falsified the checklist."[8] [Exh. 4, p. 124].

Moore argues that ANGUS's proffered reason is suspect because Moore's failure to ensure that the checklist was documented was precipitated by Angell's misconduct. Under the CPUP, Moore was ultimately responsible for ensuring that the checklist was completed.[9] In addition to failing to follow the CPUP, Moore failed to remedy the LOPC once it was in progress, despite being alerted to that possibility by a coworker. According to ANGUS's investigation and its written reasons for terminating Moore and disciplining Angell, Moore "caused" the LOPC, while Angell only "contributed" to the LOPC. [Exhs. 8 & 9]. The Court, therefore, finds that their conduct was not "nearly identical."

Moore also argues that ANGUS's proffered reason is suspect because Angell's misconduct, failing to follow CPUP procedure and falsifying the checklist, was "comparably serious" and, presumably, warranted equal or more severe discipline. Employment discrimination statutes were "not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers." *Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1507–08 (5th Cir. 1988). Even if the Court were permitted to judge whether Angell's misconduct is comparably or more serious, this would fail to satisfy the "nearly identical" standard.

---

[8] It is not clear to the Court precisely when or how Angell "falsified" the checklist—i.e., whether he falsely recorded that he had taken the actions listed on the checklist during his shift or after the LOPC.

[9] The CPUP provides in pertinent part:

The individual completing the task is responsible for ensuring that the remaining steps have been completed and all steps have been properly documented.

[Exh. 4, p. 6].

10

*See Edwards v. Grand Casinos of Miss., Inc.*, 145 Fed. Appx. 946, 948 n.3 (5th Cir. 2004) (rejecting argument that comparators' conduct was comparably serious, which "conflicts with . . . repeated, emphasized statements that the circumstances surrounding the compared employees must be 'nearly identical'"); *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 212–13 (5th Cir. 2004) (holding that the district court erred in instructing the jury that employees were similarly situated if their conduct was comparably serious); *see also Bouie v. Equistar*, 188 Fed. Appx. 233, 237 (5th Cir. 2006) (noting that comparators who engaged in allegedly more serious misconduct were not engaged in nearly identical misconduct); *Tollliver v. City of Dallas*, 96-2629, 1998 U.S. Dist. LEXIS 22098, at *27 (N.D. Tex. Oct. 1, 1998) ("The prerequisite that a plaintiff show 'nearly identical' circumstances rather than merely 'similar' circumstances is not satisfied when the allegedly comparable employees . . . engage in more serious misconduct.") (citing references omitted). Because Moore has failed to present sufficiently similar comparator evidence, the Court finds that Moore has failed to show pretext for purposes of race discrimination on this basis.

In addition, Moore cannot use Angell as a comparator for purposes of age discrimination because Angell is not substantially younger than Moore. At the time of Moore's termination, he was 52 years old and Angell was 45 years old. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004) (declining to decide whether a five-year age difference is sufficient, but noting that it was "a close question"); *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) (holding that substantially younger means at least a ten-year age difference).

Moore's additional comparator evidence also fails to establish pretext for purposes of age and race discrimination. Moore argues that Jeanette Davis, the board operator who notified Moore that the tank was not filling properly, was given no reprimand. Davis is actually older than Moore,

and her misconduct, if any, is not "nearly identical" to Moore's. Moore also argues that, "[o]n information," he is the only employee to be terminated for a LOPC in the last 10 or 12 years. [Doc. No. 23, p. 9]. Moore has not offered evidence regarding the circumstances of the prior LOPCs, which would show whether younger, Caucasian employees engaged in nearly identical conduct but were not terminated.

Finally, Moore's argument that various ANGUS employees made derogatory remarks about his abilities and race fails to establish pretext for purposes of age and race discrimination. None of his cited testimony relates those remarks to his age. *See Jenkins v. Methodist Hosps. of Dallas*, 478 F.3d 255, 261 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 181 (2007) ("In order for comments in the workplace to provide sufficient evidence of discrimination, they must be . . . related to the protected class of persons of which the plaintiff is a member.") (citation omitted).

For purposes of race discrimination, More argues that Johnny Dunn ("Dunn"), a supervisor, commented that Green, their boss, felt that he got more "bang for his buck" by training a Caucasian employee. [Exh. 4, p. 34:11–17]. Moore admitted in his deposition that Dunn only mentioned the employee's name, although both men knew the employee was Caucasian. [Exh. 4, p. 35:6–15]. Moore's subjective belief that this comment was derogatory is insufficient to raise an inference of discrimination. Moore also asserts that Ronnie Hunt ("Hunt"), another supervisor, called him "an angry black male" and told him to consider anger management. [Exh. 4, p. 77:22–24, 78:8–9].

Discriminatory remarks may be taken in account "even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003). Moore has not offered evidence showing that Dunn or Hunt

12

was a part of the team that investigated the LOPC, and the undisputed evidence shows that neither Dunn nor Hunt were involved in the decision to terminate him [Exh. B, ¶12]. *See Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 229 (5th Cir. 2000) ("[T]he fact that someone who is not involved in the employment decision of which the plaintiff complains expressed discriminatory feelings is not evidence that the decision had a discriminatory motivation. . . . It is different when . . . it may be possible to infer that the decision makers were influenced by [the discriminatory] feelings in making their decision. . . .") (quoting *Hunt v. City of Markham*, 219 F.3d 649, 652–53 (7th Cir. 2000)). Even if these "stray remarks" constituted evidence of pretext, standing alone they are insufficient to show discriminatory intent. *See Palasota*, 342 F.3d at 577 ("[S]o long as remarks are not the only evidence of pretext, they are probative of discriminatory intent.").

The Court, therefore, finds that Moore has failed to raised a genuine issue of material fact with respect to his race and age discrimination claims regarding his termination.

ANGUS's Motion for Summary Judgment on this basis is GRANTED.

### 2. Employment Opportunities

The Court must also decide whether Moore was denied employment opportunities because of his race. Moore contends that he complained to Joyce Priest, the Human Resources Manager, on September 2, 2005, that he was previously denied various employment opportunities. Moore does not specify when he was allegedly denied employment opportunities.

To pursue a claim of discrimination under Title VII, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e-5(e). Plaintiff filed a charge with the EEOC on July 10, 2006, more than 300 days after

complaining to Joyce Priest.[10]

The Court, therefore, finds that any claims relating to employment opportunities are untimely, and ANGUS's Motion for Summary Judgment on this basis is GRANTED.

**D.     Retaliation**

Moore also claims that he was terminated in retaliation for having raised an internal complaint about the lack of employment opportunities on September 2, 2005, approximately eight (8) months earlier. His complaint suggests that his retaliation claim is based upon both the ADEA and Title VII. His claim fails under both statutes. To establish a *prima facie* case of unlawful retaliation, a plaintiff must show: (1) that he engaged in protected activity; (2) that he was subjected to a materially adverse employment action; and (3) that there is a causal connection between the protected activity and the materially adverse employment action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

Moore offers no evidence of a causal connection between his September 2, 2005 complaint and his May 12, 2006 termination. Temporal proximity may be sufficient to prove the plaintiff's *prima facie* case if the protected act and the materially adverse employment action are "very close" in time. *See Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007). Here, the eight-month gap between Moore's complaint and his termination is insufficient to establish a causal connection. *See Raggs*, 278 F.3d at 471–72 (holding that a five-month lapse, without more, does not support an inference of a causal link).

---

[10]Moore argues that the limitations period should be equitably tolled because he was told that his termination would be arbitrated pursuant to an expired collective bargaining agreement, but the case he cites to does not support that proposition. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).

14

Even if Moore could prove a *prima facie* case, he cannot ultimately prevail on his claim of unlawful retaliation because he cannot overcome ANGUS's nonretaliatory reason for terminating his employment. Moore argues that ANGUS's discriminatory denial of employment opportunities is evidence of ANGUS's discriminatory intent. *See Nat'l Rr. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (noting that an employee may use time-barred prior acts as "background evidence in support of a timely claim"). However, the alleged denial of employment opportunities, alone, does not support an inference of discrimination.[11]

The Court, therefore, finds that Moore has failed to raise a genuine issue of material fact as to whether he was retaliated against, and ANGUS's Motion for Summary Judgment on this basis is GRANTED.

## III. CONCLUSION

For the foregoing reasons, ANGUS's Motion for Summary Judgment [Doc. No. 14] is GRANTED, and Moore's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this ____ day of October, 2008.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[11] Moore argues that ANGUS's citation to his unemployment record in support of its motion for summary judgment is evidence of pretext for unlawful retaliation, but the case he cites to does not support that proposition. *See Grace v. Starwood Hotels & Resorts Worldwide, Inc.*, 6-1203, 2008 U.S. Dist. LEXIS 10951 (W.D. Pa. Feb. 14, 2008).